SARAH E. BAUCUS, Appellant, *v.* MARY E. STOVER et al., as Executors, etc., Respondents.

Under the provision of the Revised Statutes (2 R. S. 84, § 13) declaring that any just claim which a testator had against one named as executor of his will shall be included in the inventory, "and such executor shall be liable for the same as for so much money in his hands * * * and he shall apply and distribute the same in the payment of debts," etc., an executor, although insolvent at the time of his appointment, is bound to account for a debt so due from him, and should be charged therewith on settlement of his accounts as for so much money in his hands. (MILLER and FINCH, JJ., dissenting.)

*It seems*, however, that the liability of the executor is not in all respects the same as if he had actually received so much money ; if wholly unable to pay in pursuance of an order or decree of the surrogate, because of insolvency, he cannot be attached and punished for contempt, nor would he be guilty of embezzlement.

*It seems* also to be proper for a surrogate, in a decree which charges an executor with a debt due from him, to specify the charge thus made separately, so as to protect his rights. (Code of Civil Procedure, § 2545.)

As to whether, where an executor has given security, his sureties will be held responsible for his debt as for so much money received, *quære.*

*Baucus* v. *Stover* (24 Hun, 109), reversed.

(Argued March 9, 1882 ; decided April 18, 1882.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

SICKELS — VOL. XLIV.     1

made at the January term, 1881, which affirmed a decree of the surrogate of Washington county on the final accounting of defendants as executors of the will of George Stover, deceased. (Reported below, 24 Hun, 109.)

The material facts are stated in the opinion.

*Robert H. McClellan* for appellant. It was error in the surrogate not to require Barr to account for his note, inventoried as an asset, and not to make a decree against him on the accounting. (2 R. S. 84, § 13; *Decker* v. *Miller*, 2 Paige, 149; *Marvin* v. *Stone*, 2 Cow. 784; *Gardener* v. *Miller*, 19 Johns. 188; *Soverhill* v. *Suydam*, 2 T. & C. 460; 59 N. Y. 140; *Adair* v. *Brimmer*, 74 id. 539; *Bigelow* v. *Bigelow*, 4 Ohio, 138; *Miller* v. *Donaldson*, 17 id. 164; *Gottsberger* v. *Taylor*, 19 N. Y. 150; *Stephens* v. *Gaylord*, 11 Mass. 269; *Leland* v. *Felton*, 1 Allen, 531; *Choate* v. *Arrington*, 116 Mass. 552; *Bentley* v. *Chapin*, 10 Cush. 173; *Ipswich Manuf. Co.* v. *Story*, 5 Metc. 310; *Sigourney* v. *Weatherall*, 6 Mass. 553; *Commonwealth* v. *Gould*, 118 id. 300, 307; *Kinney* v. *Ensign*, 18 Pick. 232; *Chapin* v. *Waters*, 110 Mass. 195; *Hayes* v. *Jackson*, 6 id. 150; *Hazleton* v. *Valentine*, 113 id. 472, 480; *Mattoon* v. *Cowing*, 13 Gray, 387; *Dorchester* v. *Webb*, Croke's Cas. 372; *Hull* v. *Pratt*, 5 Ohio, 72; *Miller* v. *Donaldson*, 17 id. 164; *Jacobs* v. *Woodside*, 6 S. C. 490, 498; *Norris* v. *Towle*, 54 N. H. 290; 23 Eng. [Moak] 165, note; W'ms on Ex'rs [6th ed.], 1310, marg. page, note; *Embury* v. *Connor*, 3 N. Y. 511.) The intention of the lawmakers was to put executors and administrators in the same relation as to claims against them held by the decedent as is manifest from the provision that both executors and administrators shall make oath to the inventory that it contains, among other things, a statement of all just claims of the deceased against such executor or administrator. (2 R. S. 84, § 16; 1 id. 311.) If the statute means what it says, that the executor is to be liable for his debts as for so much money in his hands, then the claim would be barred in six years from the time an accounting could be demanded. (*Thompson* v. *Thompson*, 1

Brad. 29; *Van Vleck* v. *Burroughs,* 6 Barb. 341; *Clark* v. *Chadeagne,* 10 Hun, 97; *Clark* v. *Ford,* 1 Abb. Ct. of App. Dec. 359.)

*D. M. Westfall* for respondents. The surrogate properly refused to charge Barr with the amount of his note as so much cash in his hands. (*Everts* v. *Everts,* 62 Barb. 577, 583; *Gardner* v. *Miller,* 19 Johns. 190; *Marvin* v. *Stone,* 2 Cow. 781; *Decker* v. *Miller,* 2 Paige, 149; *Smith* v. *Lawrence,* 11 id. 207; *Wurtz* v. *Jenkins,* 11 Barb. 546; *Soverhill* v. *Suydam,* 2 T. & C. 464; Appendix to 3 R. S. [2d. ed.] 640; *Brownell* v. *Akin,* 6 Hun, 378.) The decree of the surrogate is not a bar to the claim on Barr's note, nor does it in any way prevent a proceeding in equity to establish or enforce the claim. (3 R. S. [6th ed.] 102, § 79 [65], subd. 3; *Grover* v. *Holley,* 2 Brad. 291; *President, etc., of Bank of Poughkeepsie* v. *Hasbrouck,* 2 Seld. 216; *Decker* v. *Miller,* 2 Paige, 150; *Smith* v. *Lawrence,* 11 id. 208, 209; *Wurtz* v. *Jenkins,* 11 Barb. 547; 24 Hun, 113, 114.)

*Per Curiam.* At the time of his death George Stover held a note against James Barr for $4,561.91 and he named Barr and the other two respondents executors of his will. The executors filed with the surrogate an inventory of the estate of the deceased in which the note against Barr was entered as follows: "Note of James Barr, dated April 1st, 1874, for $4,561.91, balance due at this date $3,753.11, which note we consider very doubtful of collection of any part." At the time of the death of the testator, Barr was utterly insolvent and he has ever since remained so, and has been unable to pay any part of the balance due from him upon the note. Upon the accounting before the surrogate the creditors claimed that Barr should account for the balance due upon the note as so much money in his hands under the following provision of the Revised Statutes (2 R. S. 84, § 13): " The naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor,

but such claim shall be included among the credits and effects of the deceased in the inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal estate of the deceased." The surrogate held that Barr was not liable to account for this balance as so much money in his hands and his decision was affirmed by the General Term.

We are of opinion that the courts below errred. Before the Revised Statutes the general rule at common law was that the appointment by a creditor of his debtor as his executor extinguished the debt, so that the executor was in no way bound to account for the same as assets. The provision of the Revised Statutes which we have quoted was intended to abrogate this common law rule and introduce a new system in reference to such debts. It was the obvious purpose of the statute not only to save the executor's debt from extinguishment, but, in order to obviate all difficulty, doubt and embarrassment, to cause it to be regarded as money in his hands. Such is the plain reading of the statute. The language is free from doubt and ambiguity, and needs no construction or interpretation. If it had been intended simply that the debt should be placed upon the footing of any other debt due the deceased and merely to save it, for what it was worth, from extinguishment the section could have stopped at the word "inventory," and the balance thereof would have been without any purpose or meaning. But it goes further ; it not only provides that the debt shall not be discharged and shall be included in the inventory, but it also provides that the debtor executor shall be liable for the debt as for so much money ; and not only that, but that he shall apply and distribute the money in the payment of debts and legacies and among the next of kin. We perceive no room for doubt ; the statute says the debt shall be treated as money, and the courts have no right to say it shall not be so treated. This construction will not necessarily involve an insolvent executor in hardship and embarrassment. If a debtor unable to pay his

debt is named executor he may decline to accept the office. While the debt must be treated as money in his hands for the purpose of administration it will not for all purposes stand on the same footing as if he had actually received so much money. If wholly unable to pay the money in pursuance of the order or decree of the surrogate on account of his insolvency, he cannot be attached and punished for contempt as he could be if the money had actually been received from some other debtor. It is also clear that an executor unable to pay his own debt, and thus unable to comply with the decree of the surrogate charging him with it as so much money in his hands, would not be guilty of embezzling the money and could not be convicted of crime as he could be if he embezzled money or property which actually came into his hands. There would be the absence of all criminal intent and actual wrong-doing without which the crime could not be committed.

It would be well for a surrogate in a decree which charges an executor with a debt as so much money under the provision of law above quoted, to specify the charge thus made separately so as to save all the rights of the executor and to protect him against consequences which perhaps ought not to follow from such a charge; and this can now be accomplished under section 2545 of the Code of Civil Procedure, which provides that the surrogate must file in his office his decision, upon any case tried before him, in writing, stating separately the facts found and the conclusions of law.

It was stated upon the argument of this case that this executor had been required to give security for the performance of his duties. Whether his sureties could be held for this debt as so much money actually received by him we are not now called upon to determine, and do not determine.

We are, therefore, of the opinion that the surrogate should have charged Barr with the balance due upon his debt and the interest thereon as so much money in his hands, and should have ordered him to apply and distribute the same as so much money.

The judgment of the General Term and the decree of the surrogate should be reversed and the case should be remitted

to the surrogate, and the appellant should recover her costs out of the estate.

MILLER, J. (dissenting). The question presented upon this appeal relates to the construction to be placed upon the provisions of section 13, 2 R. S. 84, which is as follows: "The naming of any person executor in a will shall not operate as a discharge or bequest of any *just claim* which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased in the inventory, and such executor *shall be liable for the same* as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin, as part of the personal estate of the deceased."

Prior to the enactment of the statute cited, and at common law, if a creditor appointed his debtor an executor of his will, it operated as a release or a bequest of the debt, unless the debtor renounced his executorship. (*Soverhill* v. *Suydam*, 59 N. Y. 140; 2 T. & C. 460, 465.) It is said by RAPALLO, J., in the case cited in the opinion delivered in the Court of Appeals, that "the statute was intended to, and did abolish this rule, and that it was enacted in order to obviate the incongruity of requiring the executor to proceed against himself for the collection of the debt." This is also obvious from the note of the Revisers to the section cited. (3 R. S. [2d ed.] 640.)

Such being the purpose of the statute, it is not apparent how it can be extended by construction so as to charge an executor absolutely with the debt, under all circumstances, whether the demand be good or bad, whether the executor be solvent or insolvent, or whether he has or has not a defense to the claim and it is just and proper, or otherwise.

If the object was as stated in the opinion of the learned judge in the case cited, then the debt manifestly occupies the same position as any other demand in favor of the estate, and the executor is subject to the same rule as is applicable to him in regard to other claims against debtors. If it was not

collectible, the executor is exonerated, and the statute meant merely to hold the executor as liable for the debt as moneys in his hands when he was personally able and had means to pay the same. The object of the enactment is an important element in its interpretation, and that being determined by the case cited, and any construction beyond that being too far reaching and not consistent with that object, we are of the opinion that the authority is directly in point and should be decisive upon the question considered.

This construction is also supported by reading the statute cited in connection with other provisions relating to and defining the duties and obligations of executors. In the case of other assets coming to the hands of the executor, if they are good they should be collected, and he would be responsible for due diligence in enforcing payment thereof, and it would be open for him to prove upon an accounting that they were without value during the period that he was entrusted with the estate. Various provisions of the statute sustain this view. Section 69 (3 R. S. [6th ed.] 100), which relates to accountings, provides that allowances shall be made to executors and administrators for property "perished or lost" without their fault. No exception is made so that it shall not apply to an executor's debt, and to hold it is inapplicable to any debt that is lost without fault is to restrict its construction, which could not have been intended.

The demand here was of no value and was lost without any fault of the executor. Section 70 (3 R. S. [6th ed.] 101) declares that neither executors nor administrators "shall sustain any loss by decrease without their fault, of any part of the estate, but they shall * * * be allowed for such decrease upon the settlement of their accounts." No proviso is made that this section is not to apply to a debt against an executor. The construction claimed is also in conflict with section 14 (3 R. S. (6th ed.) 733), which declares that in actions against executors in which the inventory shall be given in evidence, the plaintiff or defendant may rebut the same by proof "that such property has perished or been lost." And the next sec-

tion, fifteen, provides that in such action " the defendant shall not be charged for any demands or rights of action specified in their inventory, unless it appears that such demands or rights of action have been collected, or might have been collected with due diligence."

The statutes referred to were passed mostly at the same time, and to establish a system applicable to estates and the accounting and acts of executors and administrators, and they must all be swept away and rendered of no avail if section 14 is susceptible of the construction claimed by the appellant's counsel. The greater or more extended provisions must yield to a single enactment, instead of that being construed in conformity with the general purposes of the law and the evident intention of the law makers.

The statute in question was the subject of judicial interpretation in the Supreme Court, and in *Everts* v. *Everts* (62 Barb. 577) it was held that it did not apply to all claims against an executor, but to any just claim. It is said in the opinion of the court by MULLIN, J., " The executor is *prima facie* chargeable, *but it is* competent for him to show the claim unfounded and unjust." It proceeds then to say : " It is not every claim which the testator had against the person named as executor, that becomes ' assets ; ' but it is any ' *just claim*.' * * * The validity or justice of the claim *must, when denied*, be, in some way, determined, * * * and it must be tried in the surrogate's court, in the same way, and for the same reason, that claims *against* the estate *in favor* of the executor, must be tried in that court."

The same doctrine is held by the General Term in the third department of the Supreme Court in *Brownell* v. *Akin* (6 Hun, 378). In that case it was decided that when the defendant was appointed, and had qualified as an executor, and was indebted to the estate at the time, that in an action brought to recover the same, a writ of *ne exeat* could not be issued.

In *Adair* v. *Brimmer* (74 N. Y. 539), relied upon by the appellant, one of the executors had received the amount of his legacy without paying his debt, and also much more of the

estate which he had squandered, and afterward became insolvent. The principal question was whether the conduct of the co-executor in permitting him to receive and squander the estate, was of such a character as to charge him with the loss thus occasioned, and whether in the joint accounts the debts of some of them should be credited as uncollectible, and it was held that funds advanced to one executor in excess of the share to which he is entitled as legatee, if made by and with the consent of the others, must be deemed assets remaining in the hands of all the executors, and they were severally and jointly accountable therefor as such."

It will be seen that the distinct question now presented did not arise. Nor is it presented in any of the other cases cited from this State. We have examined the Massachusetts cases, and while it is held that the common-law rule as to the discharge of executors from liability for their own debts did not prevail in that State, there was no statute on the subject, and the decisions are not applicable to the case now considered. In the case of *Norris* v. *Towle* (54 N. H. 290), the administrator became insolvent after his appointment, and afterward took the benefit of the Bankrupt Act, and his estate did not pay fifty per cent of his debts. It was held that under the statute of that State, which provides that a debt due from the administrator to the estate should be assets and accounted for as other debts, and he was bound to account for the whole debt, and it made no difference whether he was solvent or insolvent at the time he was appointed administrator. The facts differ from the case at bar, and the statute is not the same as the one now under consideration. Nor is it apparent whether the statute in New Hampshire is affected by other statutes bearing upon the subject, as in the case here. Some other authorities are cited, but none of them present the precise question as to the solvency of the executor or administrator.

The weight of authority in this State is clearly adverse to the appellant's claim. In principle no reason exists why an executor should be held to any other or different obligation in regard to a debt due from him, than he should in regard to

any other assets which may come into his hands. No stricter rule should be imposed in his own case than in any other. Primarily, it is presumed that his debts are paid to the estate, and that he has the money to distribute. But this, as in the case of any other demand, is open to inquiry and investigation; and he has a right to show that he was, and is insolvent and unable to meet the obligation. The statute was not intended to embrace a case where the debt was worthless, and there was an utter inability to pay the same. Any other or different construction would place an insolvent executor in a most unfortunate position. The debt he owed, which was of an ordinary character, would be converted into one for which he would be liable to arrest and imprisonment, and by virtue of the statute, he would become an embezzler of moneys which he had never collected or received as executor, and which he would have been unable by any diligence, effort or means within his power to obtain. While guilty of no wrong, he would still be liable to be punished and treated as a wrong-doer and a criminal. The legislature could not thus have intended to add to the cases of imprisonment and for punishing the debtor, when its entire policy has been in an adverse direction and to restrict, and not to increase, cases where punishment should follow inability to meet pecuniary engagements. Such a policy would be contrary to its uniform course and the spirit of the age.

It is suggested that the criminal intent would be wanting to convict of embezzlement. The statute in question declares that the executor shall be liable " as for so much money in his hands." He has the money according to the statute, and if he does not pay it, and in law appropriates it to his own use, he thus brings himself directly within chapter 208 of the Laws of 1877. It is also said that he should decline to serve and thus escape liability. The answer is that there is no statute which disqualifies him or prohibits his serving. He may be a good and safe executor, as he appears to have been here, although he has no pecuniary means. And if objected to on the ground of insolvency, he may be required to give security. In the latter contingency his bondsmen would be liable, and thus compelled

to pay for a deficiency which did not exist and had no reality. Nor would it be a defense that he never had the money in his hands, for the statute says that he did have it, and the surrogate must decree accordingly if he strictly follows the statute. Clearly the statute never could have been intended to convert a worthless debt into a demand, the payment of which might be enforced by imprisonment, and by making sureties liable, who never intended or expected to assume any such obligation, and who were not understood to assume it at the time they became sureties.

The general principle may also be invoked in support of the views which we have expressed that a trustee in the discharge of his duty should not be held responsible for money that he receives, except in case of negligence and a failure to discharge such duty. In regard to the right of the appellant to prosecute the claim against the executor, we think that in case the executor becomes able to pay the debt a further accounting may be had, and that the decree is not conclusive. (3 R. S. [6th ed.] § 79, p. 102.) Nor does it interfere with an equitable action to enforce payment of the demand. As the executor acted as trustee, it is not entirely apparent how he could avail himself of the statute of limitations as a bar to any future accounting.

The judgment of the General Term should be affirmed.

All concur for reversal except MILLER and FINCH, JJ., dissenting.

Judgment reversed.