CATTARAUGUS COUNTY.—HON. ALFRED SPRING,
SURROGATE.—June, 1886.

RUGG *v.* JENKS.

## *In the matter of the estate of* JONATHAN G. RUGG, *deceased.*

The section of the Revised Statutes (2 R. S., 84, § 13), declaring that "the naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased, in the inventory, and such executor shall be liable for the same, as for so much money in his hands at the time such debt or demand becomes due, and the provision of Code Civ. Pro., § 2552, making "a decree directing payment by an executor . . . . to a . . . . person interested in the estate . . . . conclusive evidence that there are sufficient assets in his hands to satisfy the sum which the decree directs him to pay," do not authorize the punishment, as for a contempt, of an insolvent executor, who was indebted to the testator, at the time of his death, for a failure, owing to such indebtedness and insolvency, to discharge a legacy, payment whereof has been adjudged by a decree.

Especially should such a stringent remedy be refused where the legatee is a co-executor of the delinquent, and, though aware that the amount of indebtedness charged against the latter did not represent money actually in his hands, omitted to enforce the decree in his favor, as legatee, until the indebted executor, who was originally able to pay, became insolvent.

Matter of Snyder, 34 *Hun*, 302—distinguished.

PETITION by Jonathan G. Rugg, one of the executors of, and a legatee under the decedent's will, for an order directing that Lemuel S. Jenks, his co-executor, be punished by fine or imprisonment, as for a contempt of the court. The facts appear sufficiently in the opinion.

TORRANCE & BLACKMON, *for petitioner.*

W. S. THRASHER, *for executor Jenks.*

THE SURROGATE.—This is a contempt proceeding against Lemuel S. Jenks, one of the executors of the will of Jonathan G. Rugg, deceased, arising out of his failure to comply with the decree entered in the Surrogate's court, directing him to distribute the funds of deceased among the legatees.

The petitioner is one of the executors, and the principal legatee named in the will of testator. The parties to this controversy were appointed executors of the will of deceased in 1878, and have since continued to act in that capacity. At the inception of the trust, Jenks was solvent, and was indebted to the estate of his testator, upon promissory notes and stated accounts, existing in the lifetime of testator, in the sum of ten thousand dollars.

In 1883, the executors filed their account in proceedings to settle the same judicially, and in October of that year a decree was entered in the Surrogate's court thereupon, charging this indebtedness against Jenks as money in his hands, and directing its distribution in accordance with the terms of the will of testator. About seven thousand dollars of the undistributed assets were due to the co-executor, Rugg, the petitioner in the proceeding now pending. Although this decree was entered in the Surrogate's court in October, 1883, yet no transcript thereof was docketed in the county clerk's office until November, 1884. At the time of the entry of the decree in the Surrogate's office, it could have been enforced against Mr. Jenks, and even a prompt docketing of a transcript of the same in the records of the county clerk's office would have insured its collection; but in Nov-

ember, 1884, Jenks was hopelessly insolvent, and at the time of the demand made by the petitioner preliminary, and with a view, to this proceeding he was, by reason of such insolvency, wholly unable to comply with the demand, or pay any part of the sum chargeable to him in the decree. In the account filed, Jenks accounts for all the money he received as executor, and the only question in this case is as to his liability for contempt in consequence of his failure to pay the debt he owed to the estate.

The counsel for Mr. Rugg, in invoking this severe remedy, rely upon the statute providing that "the naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator has against such executor, but such claim shall be included among the credits and effects of the deceased, in the inventory, and such executor shall be liable for the same, as for so much money in his hands, at the time such debt or demand becomes due" (2 R. S., 84, § 13).

Before the enactment of this statute, the appointment of an executor cancelled any claim held by the testator against him, and the only purpose of this statute was to prevent the extinguishment of such claim. To obviate any inconsistency in compelling an executor to sue himself, it was provided that any claim against him should be treated as money in his hands, so that, upon the entry of a decree against him, it could at once be enforceable by execution. The statute was not designed to change the character of a simple contract debt, by making the executor liable to imprisonment or punishment for contempt in case

of his inability to pay the same. The Code afterwards provided that, upon an entry of a decree on a judicial settlement of the account of an executor, the decree should be " conclusive evidence " of the sufficiency of assets to satisfy the same ; and then provision was made for the enforcement of the decree by execution, and contempt proceedings if necessary (Code Civ. Pro. § 2552, *et seq.* ; Matter of Snyder, 34 *Hun,* 302).

These statutes were passed to supply an obvious defect in the law—to permit the punishment, by contempt, of trustees who have embezzled and misappropriated the funds of their *cestuis que trustent.* It is a very salutary enactment, but it certainly was not designed to change the nature of a simple contract debt into one punishable as a crime. Such an alarming metamorphosis did not enter the minds of the legislators, in providing this remedy for delinquent executors. An executor who receives property belonging to his testator and misappropriates the same commits an active fraud, and should be punished unsparingly for thus converting the money or property of others. But if he is simply indebted to the decedent,—liable to him in *assumpsit,*—and by some misfortune is unable to pay his debt to the next of kin or legatees of his creditor, the bare fact of his assumption of the duties of executor should not make him amenable to the harsh and drastic contempt process. Suppose that an executor who is indebted to his testator is abundantly responsible at the time when he accepts the executorship, but immediately thereafter becomes insolvent, is he to be made the victim of contempt

proceedings in consequence of his inability to pay his debt? A preference is already given to this class of debts, in that no suit is necessary to obtain judgment in favor of the next of kin or persons entitled to the distribution of the estate; and the law did not contemplate, in addition to this, to make the executor a criminal because, forsooth, he cannot pay his debts.

In Baucus v. Stover (89 N. Y., 1), the Court of Appeals, in construing the section of the Revised Statutes which I have cited, plainly intimate, at page 5, that an executor would not be liable to be punished for contempt in a case of this kind; and even in the vigorous opinion of Judge FISH, in 34 *Hun*, 302 (*supra*), and which is cited and relied upon by the counsel for the petitioner, he holds that an executor would not be liable to punishment for contempt where he has accounted for all the moneys he has received, and is sought to be imprisoned for his failure to pay his own debt (see pp. 308, 309; also, Watson v. Nelson, 69 *N. Y.*, 537). And this construction fully protects the beneficiaries. If the executor is indebted to the testator, and is in failing circumstances, it would be ground for refusing to issue letters to him, and if he accepts the trust, and one year has elapsed, he can be compelled to account, and the entry of the decree and the docketing of the transcript places them in a situation to enforce the debt, if the executor is responsible.

In this case, there is another reason why executor Jenks should not be imprisoned. The petitioner is the co-executor. He was present at the preparation of the account; knew that these notes and accounts had not been converted into money; knew that they still

existed simply in the form of their original indebtedness, and assisted in computing the sums due and unpaid thereon.   He thus knew the statement, that this indebtedness was "cash" in the hands of executor Jenks, was false.   Notwithstanding this fact, he permitted the matter to rest, did nothing to enforce the decree, and did not even cause a transcript of the decree to be docketed until after Mr. Jenks had become irretrievably entangled.   Now, after this exceeding remissness, after his large legacy has slipped away through his culpable carelessness, by Jenks becoming a bankrupt, he seeks to proclaim his co-executor a criminal.   In 1883, cognizant as he was of every fact now known to him, he not only permitted the claim to remain uncollected, but openly aided in the preparation of an account misleading to his co-legatees. If there was any obliquity, any delinquency, he was *in pari delictu,* and should not now be rewarded because his co-partner has become insolvent.   Contribution among wrong doers was never favored.

The petition and proceedings must be dismissed, and, as there was a trial on the merits, with seventy dollars costs, and a decree will be entered accordingly.