## In re FOOTE.

### In re LEAVITT'S WILL.

*(Supreme Court, General Term, First Department. December 31, 1891.)*

1. LIABILITY OF SURVIVING PARTNER AS EXECUTOR—EVIDENCE.
   L. contributed $30,000 to the capital of a firm under an agreement by which he was to receive 10 per cent. per annum on his contribution, but should share in none of the profits of the firm, except in any excess that there might be over $22,000 in any one year, nor share in any of its losses in any year unless there should be a similar excess of profits in that year. L. died, leaving F., the other member of the firm, as his executor. L. received his 10 per cent. during his life-time, but received no profits, and became chargeable with no losses. On his death, F. stopped the payments of 10 per cent., reducing them to 6 per cent., charging the same to a separate account. *Held* a liquidation by F., as surviving partner, so as to make him chargeable with the $30,000 as executor.

2. SAME—BAD DEBTS OF FIRM.
   In such case, there having been no losses in the business which could impair its capital, and the bad debts sought by F., as surviving partner, to be charged against L.'s capital, being simply losses affecting the profits going to F., the surrogate, in settling F.'s accounts as executor, properly refused to deduct from L.'s capital of $30,000 in F.'s hands the bad debts of the concern.

Appeal from surrogate's court, New York county.

Judicial settlement of the accounts of John Howard Foote, as executor of Henry M. Leavitt, deceased. From certain parts of the surrogate's decree the executor appeals. Affirmed.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

*Miron Winslow,* for appellant. *Robinson, Bright, Biddle & Ward,* (*Henry Galbraith Ward,* of counsel,) for Jennie H. Leavitt and others, respondents. *E. T. Taggard,* special guardian, for infant respondents.

BARRETT, J. The executor (Foote) and the deceased (Leavitt) were partners; consequently Mr. Foote occupies the dual position of surviving partner of the firm and personal representative of the deceased. As executor he accounted below for the proceedings with regard to Mr. Leavitt's estate. This is an appeal taken by him as executor—*First,* from so much of the decree of the surrogate settling his accounts as charged him with $30,000—that being Mr. Leavitt's contribution to the capital stock of the firm—as money in his

(Foote's) hands as executor; and, *second*, from so much of the decree as refused to allow any deduction from this sum for certain bad debts of the firm. The opinion of the learned surrogate upon this last question, which is to be found between folios 132 and 136 of the case, is quite satisfactory, and we concur in the construction which he has there given to the articles of copartnership. Any further discussion upon this head would only be a multiplying of words or a repetition of the learned surrogate's thought in other forms of expression. We think he has clearly demonstrated that, as between the partners, Mr. Leavitt was only to share such losses as might occur after the division in any one year of an excess of net profits over and above the sum of $22,000. This view is in precise accord with the terms of the articles of copartnership, and is entirely in harmony with the very special arrangement upon which Mr. Leavitt contributed his $30,000, and became a silent partner with Mr. Foote. The question first stated, however, calls for a little further consideration. It is true that the facts of this case are not exactly like those of *Baucus* v. *Stover*, 89 N. Y. 1. There one of the executors, named Barr, was liable to the deceased upon a liquidated demand, namely, a promissory note for $4,561.91. It was held that, upon the final accounting of the executors, the surrogate should have charged this executor, Barr, with the balance due upon his debt as so much money in his hands. The contention here, however, is that the partnership affairs must be settled, and the extent of Mr. Foote's indebtedness as surviving partner thus ascertained, before he can be charged as executor with such liquidated sum; in other words, that, as surviving partner, he must first account to himself as executor. Assuming the correctness of this view, we think that, as matter of fact, Mr. Foote's acts since the death of his partner have amounted to a liquidation, and that by such acts he has bound himself to pay the specific sum with which he has been charged by the learned surrogate. As we have seen, the capital which Mr. Leavitt contributed to the firm was not, as between himself and Mr. Foote, subject to the losses of the business generally. Indeed, Mr. Foote did not attempt to charge him with any such losses during his life-time. Mr. Leavitt was to and did receive 10 per centum upon his capital of $30,000, and this 10 per centum, under the articles, was charged to the general expense account of the house. This continued, without deduction, until Mr. Leavitt died. Then the 10 per centum stopped, and the credits of interest were reduced by Mr. Foote to 6 per centum, and placed in another account. Upon his examination Mr. Foote was asked the following questions, and gave the following answers: "*Question.* So that, after his death, the stock account was closed? *Answer.* Not closed; but his credits of interest after that date were to be at the rate of six per cent. *Q.* Why were they not kept in the same account as the contribution of capital? *A.* I was informed by counsel that would not be the proper way. *Q.* Mr. Foote, as I understand it, you closed up Mr. Leavitt's account under the articles of partnership October 1, 1886, and from that time on treated it as an indebtedness to the estate bearing six per cent. interest? *A.* Yes." It is evident from this that Mr. Foote understood that he was thereafter liable for the amount of Mr. Leavitt's capital, with ordinary interest; and in fact he was so liable under the articles of copartnership, for Mr. Leavitt was not to share in the profits of the firm until they amounted, in some one year, to $22,000 net, and it appears that the net profits never reached that sum in any one year. Thus Mr. Leavitt had his 10 per cent. throughout, and Mr. Foote had all the profits throughout. It followed that, upon Mr. Leavitt's death, there were, as between the partners, neither profits nor losses to be ascertained, and that Mr. Leavitt's legal representatives were entitled to withdraw the specific sum of $30,000. There were no losses in the business generally which could have impaired the capital, and the bad debts now sought to be charged against Mr. Leavitt's capital were simply losses affecting the profits which went to Mr. Foote. The latter gentleman plainly

recognized this by retaining the $30,000 at 6 per cent., and treating it as a personal indebtedness. This conclusion is reinforced by the fact that, when he filed his inventory as executor, he stated therein that Mr. Leavitt's interest in the firm was of the par value of $30,000, and of the appraised value of $30,000. These statements were based upon his understanding that that sum was due and payable, and was then, upon the face of his books, drawing lawful interest, like any ordinary debt. We think, therefore, that upon the facts this case comes within the principle of *Baucus* v. *Stover, supra,* and *In re Consalus,* 95 N. Y. 340, and that the decree of the surrogate, charging Mr. Foote with the sum in question without deductions for bad debts, was right. As this appeal was taken for the benefit of Mr. Foote personally, we think he should be charged personally with the costs. They should not come out of the estate, because of his unsuccessful effort to reduce the estate for his own benefit. The decree of the surrogate should therefore be affirmed, with costs to be paid by John Howard Foote personally. All concur