In the Matter of the Estate of MOISE LIPSIT, Deceased. DAVID A. BARNHARD, Individually and as Executor of MOISE LIPSIT, Deceased, Appellant-Respondent; Chase Manhattan Bank, as Executor of Moise Lipsit, Deceased, Respondent-Appellant, et al., Respondents.

Second Department, July 9, 1964.

510

*David A. Barnhard,* in person, and *Saul Steinlauf* for appellant-respondent.

*Milbank, Tweed, Hadley & McCloy* (*David G. Tenney, Jr.,* and *J. Wesley Hart* of counsel), for respondent-appellant.

*Debevoise, Plimpton, Lyons & Gates* (*Stephen Benjamin* of counsel), for *Stefanie Lipsit Taskovski,* respondent.

CHRIST, J.  The substantial issue presented on this appeal in an accounting proceeding is whether the coexecutor Barnhard may interpose the defense of the Statute of Limitations with respect to promissory notes and checks which he had concededly executed and delivered to his testator and which were held by the testator at the time of his death.  The disposition of this issue turns essentially on a construction of section 203 of the Surrogate's Court Act.

The testator, Moise Lipsit, executed his will on January 26, 1956 and died on August 6, 1958.  Letters testamentary were issued to Barnhard and to the Chase Manhattan Bank on September 19, 1958.  The following notes and checks, now in the bank's possession, were held by the testator at the time of his death:

(1) note for $3,000, dated January 25, 1949, payable one year after date;

(2) note for $2,000, dated March 25, 1949, payable one year after date;

(3) note for $2,500, dated July 25, 1950, payable on demand;

(4) check for $2,000, dated September 7, 1949, payable on demand; and

(5) check for $1,000, dated October 5, 1953, payable on demand.

None of these items bore any reference to interest.  It will be seen that, at the time the will was made, the Statute of Limitations had run on the note dated January 25, 1949 and on the check dated September 7, 1949.  As to the notes dated March 25, 1949 and July 25, 1950, respectively, the statute ran out after the will was made but before the testator's death and before the executors' appointment.  At the time of such appointment, however, the check dated October 5, 1953 had not yet been barred by the statute.  Nowhere is it claimed that these notes and checks do not represent just claims against Barnhard, which had been due to the testator.  The sole contention is that, since the Statute of Limitations has run, Barnhard may rely thereon and thus absolve himself from payment to the estate.

On November 18, 1958 the Chase Manhattan Bank commenced an action in the Supreme Court against Barnhard for recovery on the five specified items, but by a court order made in September, 1959, the action was voluntarily discontinued without prejudice to a proceeding by the bank in the Surrogate's Court for recovery pursuant to section 203 of the Surrogate's Court Act.  The issue was ultimately submitted for disposition as a matter of law in this accounting proceeding.  The Surrogate

held that the Statute of Limitations was not available to the executor (see 39 Misc 2d 27). We hold such determination to be correct.

Section 203 of the Surrogate's Court Act provides in pertinent part: "Assets; debt due from executor to testator; effect of discharge by will. The naming of a person executor in a will does not operate as a discharge or bequest of any just claim due or to become due which the testator had against him; but it must be included among the credits and effects of the deceased in the inventory, and the executor shall be liable for the same as for so much money in his hands at the time the debt or demand becomes due, and he must apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal property of the deceased."

The common-law rule was that the appointment of a person as executor extinguished any obligations he may have had towards his testator; the rationale was that he could not sue himself to recover on the obligation (*Soverhill* v. *Suydam,* 59 N. Y. 140; *Matter of Consalus,* 95 N. Y. 340). Section 203 and its predecessor (Rev. Stat. of N. Y., part II, ch. VI, tit. III, § 13), which is identical in language for present purposes, are in derogation of that rule. Early in its history, the predecessor section was judicially interpreted (*Baucus* v. *Stover,* 89 N. Y. 1 [1882]). In that case, the testator Stover held the note of one Barr whom he had named a coexecutor. At the time of Stover's death and continuously thereafter, Barr remained insolvent and unable to pay the note. The Court of Appeals held (p. 3) that it was " the obvious purpose of the statute not only to save the executor's debt from extinguishment, but, in order to obviate all difficulty, doubt and embarrassment, to cause it to be regarded as money in his hands." The court added that, if the legislative purpose had been merely to place the executor's debt on the same footing as any other debt owed to an estate, it would have been unnecessary to add, after the word "inventory", the statement to the effect that " the executor shall be liable for the same [debt] as for so much money in his hands ". Accordingly, the court determined that the Surrogate should have ordered Barr to account for his debt as money in his hands and should have directed him to apply and distribute the same. (See, also, *Matter of Shaefitz,* 6 Misc 2d 704.)

This statutory interpretation has been accepted in another jurisdiction in relation to a statute which is virtually identical with the New York statute (*Minifie* v. *Rowley,* 187 Cal. 481, 486). In that case the California Supreme Court held that, when a person assumed the office of executor, he became chargeable

to the estate for the amount of his original debt to the testator, as for money in his hands "irrespective of the running of the period of the statute of limitations against the debt itself". It was noted that the nature of his obligation was transformed by the intervening fiduciary qualification. Although the facts in *Minifie* are not "on all fours" with the facts in *Baucus* (*supra*), the *Baucus* interpretation was adopted.

It may also be noted that some years after the decision in *Minifie*, the District Court of Appeals in California held that a debt outlawed by the Statute of Limitations could not be chargeable against an *administrator* (*Matter of Azevedo*, 17 Cal. App. 2d 710). But that case neither mentioned *Minifie*, nor discussed the California statute. The rule in *Azevedo*, however, is not in conflict with the *Minifie* dictum or with the *Baucus* interpretation for the reason that an administrator was involved in *Azevedo*, whereas both the New York and California statutes specifically govern executors only.

We have considered *Matter of Farrell* (121 Misc. 536) which has been cited as a precedent contrary to the conclusion which we have here reached. In *Farrell*, however, no consideration was given to section 203 of the Surrogate's Court Act; and the court there relied upon *Kimball* v. *Scribner* (174 App. Div. 845). But the *Kimball* case was quite different from the *Farrell* case. Indeed, in *Kimball* the basic question of an executor's indebtedness to a testator and the more crucial question as to the effect of section 203 upon such an indebtedness, were in no way involved.

It is urged that "just claim" as that phrase is used in section 203 envisages a legally collectible obligation. But that statute is *sui generis* because it touches a special relationship, that of a fiduciary; and much of its meaning must be gleaned from the considerations which evolve from that relationship. In enacting section 203 the Legislature knew that it was affecting a unique relationship; and with that premise it created an obligation vis-a-vis an executor and his testator's estate different from the ordinary relationship between debtor and creditor. The use of the adjective "just" in section 203 should connote more than legally enforcible claims; even Webster's New World Dictionary gives "right or fair" as the first meaning of "just", whereas "legally right" is the fourth suggested meaning (see *Matter of Consalus*, 95 N. Y. 340, *supra*).

A Statute of Limitations does not extinguish the debt, it only bars the remedy (*Hulbert* v. *Clark*, 128 N. Y. 295). Section 203 not only destroys an executor's defense of the Statute of Limitations as to a just debt owed by him to his testator; it

does more: by its specific language that "the executor shall be liable for the same as for so much money in his hands", it transforms the debt into an estate asset by operation of law.

We believe that the foregoing construction of the statute (Surrogate's Ct. Act, § 203) gives to the estate a necessary protection. It is presumed that one who reposes in another the confidence and trust to administer and protect his estate does not expect that the person whom he chooses as his fiduciary will seek to escape payment of his debt to the estate by asserting that the time for collection has passed. A testator who so intends may easily say so in the will by an express provision forgiving the debt. On the other hand, it may also be said that, if one who has been named as executor wishes to interpose the Statute of Limitations against the estate, he may do so by simply renouncing his executorship.

The Statute of Limitations is a defense to be asserted; it does not operate as an automatic discharge of debt. When one who is charged with the collection and marshalling of estate assets is also confronted with the choice of resisting a just indebtedness by pleading the statute or paying what he really owes, he is caught between self-interest and duty to the estate; he is in the position of divided loyalty. The construction here placed on section 203 obviates this dilemma (see 4 Jessup-Redfield, Surrogate's Law and Practice, § 3383, p. 364; 3 Warren's Heaton, Surrogates' Courts, § 226, par. 3 [e]; 1A Bradford Butler, New York Surrogate Law and Practice, § 777, p. 406).

However, even if the determination of this issue were otherwise, the last check (Item No. 5) would be chargeable against the executor Barnhard. That check was not barred at the time he qualified as executor, and there can be no dispute that this type of obligation falls squarely within the statute (Surrogate's Ct. Act, § 203).

Several collateral issues have been presented. The Surrogate, after determining that the executor could not interpose the Statute of Limitations as a defense, added interest upon all five items from their respective due dates. One of the promissory notes and both checks were payable on demand; the other two notes were payable one year after date. Modification is necessary with respect to the demand items, because demand instruments, which do not otherwise provide for interest, bear interest only from the date of the first proven demand (*Van Vliet* v. *Kanter,* 139 App. Div. 603). The first proven demand for these three items was the action commenced by the Chase Manhattan Bank in the Supreme Court for recovery on all the

items; the date was November 18, 1958. Interest on the demand items should run, therefore, from such date.

Superficially, this modification would seem to create an inconsistency with the primary holding that the statute (Surrogate's Ct. Act, § 203) transforms the debt into an estate asset, for once Barnhard had qualified as executor on September 19, 1958 he in effect had cash in hand, thus obviating the necessity for any demand. The query then arises: should the interest as to the demand items be computed from the date of his qualifications? We think not. In *Baucus* v. *Stover* (89 N. Y. 1, 5, *supra*), in dealing with the problem of how to protect an insolvent executor from contempt in view of the obligation imposed on him to account for indebtedness, the court noted that: "While the debt must be treated as money in [the executor's] hands for the purpose of administration it will not for all purposes stand on the same footing as if he had actually received so much money." This caveat acknowledges the true nature of the holding in *Baucus*, namely: that transformation of the debt into an asset is nothing more than a legal fiction designed to protect the estate and its beneficiaries from an executor who happens to be in the ambivalent posture of both the obligor and the obligee. The caveat should be applied to the collateral issue of interest; and hence the general rule as to the commencement date for the imposition of interest on demand instruments should obtain.

Nor do we find any merit in the executor Barnhard's contention that the Surrogate erred in not setting up an adequate reserve for payment of future contingent charges against the estate. In any event, the issue is now moot, since one of the primary assets of the estate has become marketable by the expiration of a lease.

The coexecutor Chase Manhattan Bank has cross-appealed, contending that its counsel received an inadequate counsel fee and that Barnhard, as attorney, received an excessive counsel fee. The Surrogate allowed Barnhard $10,000 and a like amount to the bank's attorneys. The affidavits describing the nature of the respective attorneys' services are prolific. However, the salient fact is that $20,000 was the combined maximum amount which the Surrogate deemed proper to charge against the estate for legal fees. With this we concur. The bank's attorneys claimed they performed services totaling 1,300 man hours; Barnhard claimed 800 man hours. *Matter of Potts* (213 App. Div. 59, affd. 241 N. Y. 593) still stands as the beacon in fixing reasonable attorney's fees. The criteria are: the time spent;

the difficulties involved; the nature of the services; the amount involved; the professional standing of counsel; and the results achieved. Based upon the criterion of time spent, the bank's attorneys would be entitled mathematically to 61.9% of the $20,000 maximum, and Barnhard would be entitled to the balance of 38.1%. Upon computation, this equals $12,380 for the former and $7,620 for the latter. The bank's attorneys appear to have performed the more complicated services although, as to that, there is sharp dispute. They have, however, produced the better results for the estate. Moreover, some of Barnhard's legal services were performed in his own interest, in his defense against recovery of the indebtedness. Under all the circumstances, it is our opinion that the attorneys' fees should be modified to increase the bank's attorneys' award to $13,000 plus disbursements, and to reduce Barnhard's award to $7,000 plus disbursements.

Accordingly, the decree and the order should be modified on the law and facts to the extent of: (a) imposing interest from November 18, 1958 on the three demand items, that is, on the promissory note dated July 25, 1950 and on the two checks dated September 7, 1949 and October 5, 1953, respectively; (b) reducing to $7,000 plus disbursements the amount awarded to Barnhard; and (c) increasing to $13,000 plus disbursements the amount awarded to the bank's attorneys. As so modified, the decree and order, insofar as appealed from by the respective parties, should be affirmed, with one bill of costs to each party appearing and filing a separate brief, payable out of the estate.

Findings of fact contained in the Surrogate's decision and opinion (see 39 Misc 2d 27) which may be inconsistent herewith should be reversed, and new findings made as indicated in this opinion.

BELDOCK, P. J., KLEINFELD, RABIN and HOPKINS, JJ., concur.

Decree and order modified on the law and the facts to the extent of (a) imposing interest from November 18, 1958, on said Barnhard's promissory note dated July 25, 1950 and on two checks dated September 7, 1949 and October 5, 1953, respectively; (b) reducing to $7,000 plus disbursements the amount of the counsel fee awarded to Barnhard; and (c) increasing to $13,000 plus disbursements the amount of the counsel fee awarded to the bank's attorneys. As thus modified, the decree and order, insofar as appealed from by the respective parties, affirmed, with one bill of costs to each party appearing and filing a separate brief, payable out of the estate.

Findings of fact contained in the Surrogate's decision and opinion (see 39 Misc 2d 27) which may be inconsistent herewith are reversed, and new findings made as indicated in the opinion herewith.