In the Matter of the Accounting of JOHN CONSALUS, as Executor, etc.

Where, after the making of a loan, a promissory note was given by the borrower to the lender for the sum loaned, under an agreement that the

former should pay more than lawful interest, *held*, that while the defense
of usury was good as against the note, the lender was entitled, in the
absence of evidence that the loan was made originally upon an usurious
agreement, to recover the sum loaned with lawful interest, deducting
therefrom, payments of interest which had been made at the usurious
rate agreed upon.

The statute of limitations was set up as a bar to a claim for the original
loan. *Held*, that the payments of interest, although made and indorsed
upon the usurious note, were to be considered as made for the money
originally loaned, and might be resorted to, to take the case out of the
statute,

In the account filed upon the accounting of an executor, he charged him-
self with a note given by him to his testatrix, but credited himself with
the amount thereof on the ground that it was void for usury. Objections
were filed to this credit. Evidence was given showing that the note was
made under an usurious agreement, but for money previously loaned,
and no proof was made that the original loan was usurious. *Held*, that
the executor was properly charged with the amount of the original loan
and lawful interest thereon, less payments ; that it was not necessary to
state the charge in the objections filed to the account.

The provision of the Revised Statutes (2 R. S. 84, § 13), abolishing the com-
mon-law rule under which the appointment of a debtor as executor by
his creditor discharges the debt, and making the executor liable for "any
just claim " the testator had against him, " as for so much money in his
hands," includes an indebtedness of a firm of which the executor is a
member; and the same should be included in the inventory and charged
to the executor.

(Argued March 5, 1884 ; decided March 21, 1884.)

APPEAL by John Consalus, executor of the will of Amelia
Hall, deceased, from a judgment of the General Term of the
Supreme Court, in the second judicial department, entered
upon an order made January 17, 1882, which affirmed a decree
of the surrogate of the county of Rensselaer upon settlement
of the accounts of said executor.

The material facts are stated in the opinion.

*Henry A. Merritt* for appellant. In appeals from the de-
cision of a surrogate, the whole case will be examined by the
appellate court as well upon the facts as upon the law. (*Schenck*
v. *Raynor*, 22 N. Y. 420 ; *Robinson* v. *Raynor*, 28 id. 494.)
The executor in these proceedings was at liberty to interpose

usury, or any other defense which he had to the note or claim in question. (*Martin* v. *Gage*, 9 N. Y. 398 ; 3 R. S. 171, § 14 [5th ed.] ; 2 Edm. 86, § 13 ; *Everts* v. *Everts*, 62 Barb. 577 ; *Streal* v. *Fortune*, 2 Bradf. 116.) The interest upon the note in question received, or taken and agreed to be received or taken, being greater than that permitted by law, the same is void. (1 R. S. 772, § 5 ; 1 Edm. ed. 726, § 5.) Where the defense of usury is interposed a plaintiff cannot recover upon the original demand, even if valid, where the same is not set forth and claimed to be recovered for in the pleadings. (*Hausee* v. *Phinney*, 20 Hun, 153.) Payment and receipt of usurious interest is *prima facie* evidence of a corrupt agreement. (*N. Y. F. Ins. Co.* v. *Ely*, 2 Cow. 678, 716 ; *Shoop* v. *Clark*, 4 Abb. Ct. of App. 235 ; *Ferrall* v. *Shain*, 1 Saund. 292 ; *Hammond* v. *Hopping*, 13 Wend. 505 ; *Catlin* v. *Gunter*, 11 N. Y. 368 ; *Storer* v. *Coe*, 2 Bosw. 661 ; *Smith* v. *Hathorn*, 88 N. Y. 211 ; *Fiedler* v. *Darrin*, 50 id. 437.) If any part of the consideration of the note was usurious, it tainted and invalidated the whole security. (*Jackson* v. *Packard*, 6 Wend. 415 ; *Fulton Bank* v. *Benedict*, 1 Hall, 480.) The decree of the surrogate is erroneous and should be reversed, and if upon questions of law, sent back to the surrogate. (*Sheridan* v. *Houghton*, 84 N. Y. 643.)

*Esek Cowen* for respondent. The burden of proof is on the party setting up usury to show affirmatively a corrupt agreement, and if the facts are just as consistent with a payment for forbearance, as upon a loan the defense will not be sustained. (*Booth* v. *Swezy*, 8 N. Y. 276 ; *Law* v. *Merrils*, 6 Wend. 268 ; *Hammond* v. *Smith*, 17 Vt. 231.)

EARL, J. The appellant, John Consalus, was nominated in the will of Mrs. Amelia W. Hall as her executor, and letters testamentary were issued to him in July, 1876. The respondent, James W. Ward, was a legatee named in the will, and in January, 1880, he filed a petition with the surrogate for the purpose of compelling the executor to account and pay his

legacy. In pursuance of the citation served upon the executor, he appeared before the surrogate and filed his account, in which he charged himself with a note of $8,000, as follows: "Note of John Consalus, which is claimed to be illegal and void, and nothing due thereon, $8,000;" and he credited himself as follows: "Note of John Consalus, claimed to be void by usury, $8,000." Ward filed objections to the account, among which was one to the credit of $8,000. The matter came to a hearing before the surrogate; and the counsel for Ward put in evidence a note dated August 15, 1874, for $8,000, payable two years after date, with interest semi-annually. On the back of this note were three indorsements of $400 each, for semi-annual interest, dated respectively, February 15, 1875, August 17, 1875, and February, 1876; and he asked that the note with unpaid interest be charged to the executor and credited to the estate of the deceased in the account. The executor then produced David A. Consalus, his brother, as a witness, who testified that he and John Consalus, the executor, were partners in business in 1867, 1868 and 1869, and that previous to February, 1869, the firm had about $6,000 belonging to Mrs. Hall; that about February 15, 1869, that sum was increased to $8,000, and that on that day a note was given for $8,000, payable to Mrs. Hall one year after date, signed by John Consalus, D. A. Consalus and Emmanuel Consalus, the latter being the father of the other two and surety for them; that the agreement was that the firm would pay her the same rate of interest upon the note which they had paid her, ten per cent, and that that rate was thereafter paid. On the back of that note were indorsements of semi-annual interest at the rate of ten per cent, except the first indorsement, which was February 15, 1870, $400 in full for interest to that date. The last indorsement was for semi-annual interest, $400, due August 15, 1874. It was also proved that the note first put in evidence was given in lieu of the one last put in evidence, and that on the 17th day of February, 1868, a copy of an interest account was delivered to Mrs. Hall, in which she was credited with interest on $6,000

from December 21 to February 15, 1868, at the rate of ten per cent, $95; and from February 5 to February 15, 1868, on $2,000 at ten per cent, $5.56. It appeared that on the 15th day of February, 1870, $3,000 of the principal was paid upon the earliest note; and that on the 15th day of August, 1871, Mrs. Hall reloaned to Consalus the sum of $3,000 at ten per cent, and thereafter the note was permitted to stand, and again represented $8,000.

This was substantially all the evidence given bearing upon the subject of usury. There was undoubtedly evidence sufficient to authorize a finding that the two notes were usurious, and, therefore, void. But the loan of $6,000 to the firm of John and D. A. Consalus antedated both notes. It does not appear how long the firm had had that $6,000, and there is no direct evidence whatever, as to the terms upon which the loan of that sum was made. There is no proof that it was made upon any usurious agreement, but abundant proof that some time after this money was loaned to the firm, they commenced paying Mrs. Hall interest at the rate of ten per cent. There is, however, no proof, and no necessary inference, that there was any agreement for that rate of interest when the money was first loaned to the firm. The payment of that rate of interest may have been by an arrangement afterward made, and it may have been voluntarily paid. Whatever usurious agreement was made subsequently to the original loan cannot affect it, but simply avoids the notes which were subsequently given.

The surrogate found that the reloan of the $3,000 was upon a usurious agreement; and held that Consalus was not bound to pay that; but held that he was bound to pay the balance of the original loan, which was less than the $6,000, with interest at the rate of seven per cent to the first of January, 1880, and at six per cent thereafter; and the payments in excess of the legal rate of interest were credited.

We cannot say that the surrogate erred in his conclusions of fact. A defense of this kind under the circumstances here existing should have been made out by very clear and satisfactory evidence. And there certainly was no proof, con-

clusive in law, that the original loan of $6,000, or even of the $2,000 additional, subsequently made, were upon any usurious consideration ; and hence it follows that when the two usurious notes were brushed away, the firm remained liable to pay so much of the original loan as had never been paid.

It is objected that the surrogate had no right to charge Consalus with the original loan, because in the objections filed to his account, no such claim was made. But that was not necessary. There were no pleadings or specifications required. He was called upon to render his account, and he was bound to account for whatever he owed the testatrix at her death.

The further claim was made, on behalf of the executor, that the original loan was barred by the statute of limitations. The answer to that is, that the numerous payments made down to the time of the testatrix's death, although made and indorsed upon the usurious notes, were made for the money originally loaned, and they may be regarded as payments of interest upon that loan ; and hence the statute furnishes no bar.

It was also claimed that the executor could not be charged with the debts due from a firm of which he was a member ; and that claim is more plausible, although, we think, not well founded. It was the rule of the common law, that if a creditor appointed his debtor his executor, the appointment operated as a release or extinguishment of the debt ; and the law was the same where the creditor appointed one of several joint, or even of joint and several debtors his executor. In that case it operated as an extinguishment of the debt as to all, and released all. The reason upon which the rule was founded seems to be that a debt is merely the right to recover the amount by way of action ; and as an executor could not maintain an action against himself, or against the firm of which he was a member, his appointment by his creditor to that office suspended the action upon the debt, and thus practically discharged it. (Williams on Executors, 1180 ; *Baucus* v. *Stover*, 89 N. Y. 1 ; *Soverhill* v. *Suydam*, 59 id. 140.) This rule of the common law was abolished by the Revised Statutes. (2 R.

S. 84, § 13.) That section provides that "the naming of any person executor in a will shall not operate as a discharge or bequest of any just claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased, in the inventory; and such executor shall be liable for the same, as for so much money in his hands at the time such debt or demand becomes due; and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin, as part of the personal estate of the deceased." As a member of this firm, the executor owed this debt, and the whole of it, to the testatrix. As executor he could not sue the firm of which he was a member. There was no way, therefore, by which he could enforce payment from the firm unwilling to pay. Within the meaning of that section this was, therefore, a just claim against him, which he ought to pay, and which should be regarded as so much money in his hands.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.