FRANCIS L. AULD *vs.* JOSEPH CAUNT & others.

Suffolk.    December 1, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, & DE COURCY, JJ.

*Corporation,* Foreign, Liability of subscribers for stock under statutes of Maine. *Maine.*

The provisions of the Revised Statutes of Maine, c. 47, §§ 87, 89, as to the liability to a judgment creditor of a Maine corporation of those "who have subscribed for or agreed to take stock in said corporation and have not paid for the same," as that statute is interpreted by the highest court of the State of Maine and as it accordingly is enforced here, create a liability only of persons who subscribed for stock in transactions with the corporation; and persons, who received or purchased such stock from a subscriber and did not intend to deal with the corporation itself, cannot be made liable under the statute.

BILL IN EQUITY, filed in the Supreme Judicial Court on August 8, 1911, by the holder of a judgment of the Superior Court of this Commonwealth against the First World's Shoe and Leather Fair Company, a corporation organized under and subject to the laws of the State of Maine, seeking to collect the amount of such judgment against the defendants as subscribers for the stock of that corporation by enforcing the liability created by the Revised Statutes of Maine, c. 47, §§ 87, 89.

The case was referred to James D. Colt, Esquire, as master, "to hear the parties and their evidence, to find the facts, decide the case, and make report to the court." The material facts found by the master are stated in the opinion.

The case came on to be heard before *De Courcy,* J., who, at the request of the parties, reserved it, upon the pleadings, the master's report and the exceptions thereto, a motion of the plaintiff to recommit the report, and an agreement of the parties as to certain facts, for determination by the full court.

*G. F. Ordway,* for the plaintiff.

*B. B. Jones,* for the defendants Caunt and others.

*S. H. Pillsbury,* (*W. J. Nolan* with him,) for the defendant Rice and Hutchins, Incorporated.

RUGG. C. J. This is a suit brought to collect the amount of a judgment, recovered by the plaintiff in the courts of this Com-

monwealth against a Maine corporation, from the defendants as subscribers to its stock. If it be assumed in favor of the plaintiff that he has recovered a *bona fide* judgment within the meaning of the Maine statute, and that a judgment obtained in this Commonwealth and not in the courts of Maine may be the foundation for a suit under this statute, he still must maintain that the defendants are persons "who have subscribed for or agreed to take stock in said corporation and have not paid for the same," under the Revised Statutes of Maine (1903) c. 47, § 89. This Maine statute has been interpreted by the highest court of that State in *Libby* v. *Tobey*, 82 Maine, 397, where it was said at pages 404-406: "The individual liability of members for the debt of a corporation is a departure from the established rules of law, and is founded solely upon grounds of public policy, depending entirely upon express provisions of statute law. The defendant, if chargeable at all, is chargeable upon a statute liability, as having 'subscribed for or agreed to take stock in said corporation,' and who has 'not paid for the same.' The contract was not made with him, or on his account. There was no contract express or implied between him and the plaintiff. Such liability is 'therefore to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute.' *Gray* v. *Coffin*, 9 Cush. 192. *Erickson* v. *Nesmith*, 4 Allen, 233, 235. *Knowlton* v. *Ackley*, 8 Cush. 93, 96. [See also *Savage* v. *Shaw*, 195 Mass. 571, 574.]

" . . . The history of the numerous and somewhat complicated enactments upon this branch of the law may be found in an opinion by Tenney, C. J., in *Milliken* v. *Whitehouse*, 49 Maine, 527, and it is unnecessary to enter upon any extended review of the legislation on this subject here. It is sufficient to say that, up to 1871, the liability existing by general statute (R. S., 1871, c. 46, §§ 24, 26,) had been against the 'stockholders,' to the amount of their stock, in case of deficiency of attachable corporate property. But, by the act of 1871, c. 205, the statute in relation to the liability of stockholders in corporations was modified, and the word 'stockholders' which had existed in previous statutes was omitted, and the remedy therein provided now exists only against persons 'who have subscribed for or agreed to take stock in said corporation and have not paid for the same,' etc."

"The defendant having sold and transferred all the original stock

for which he had subscribed, except the four hundred shares, at the time this cause of action was contracted, can not be held upon the one thousand shares which he had purchased in the market. They were not shares he had 'subscribed for or agreed to take' within the meaning of the statute. *Thames Tunnel Co.* v. *Sheldon,* 6 B. & C. 341 (13 E. C. L. 194). A fair inference to be drawn from the language of the statute is that of a transaction or contract with the corporation in accepting, subscribing for or agreeing to take stock, and not one between individuals in the purchase of stock in open market. Had the Legislature intended to make the remedy as broad as that contended for by the plaintiff, and thus render the defendant liable as a 'stockholder' upon all stock held or owned by him, regardless of the manner in which he may have obtained it, it would have been an easy matter to have so expressed its meaning. Not having done so, it is not the province of the court to extend the remedy beyond the express provisions of positive enactment, especially in cases where the statute is to be construed strictly.

"But it is claimed, on the part of the plaintiff, that inasmuch as the defendant was a stockholder in the corporation and knew the circumstances under which the stock was originally issued by the corporation, he was a purchaser with notice, and therefore liable on the thousand shares purchased in the market as well as on the four hundred shares of original stock.

"We do not think this doctrine can properly be extended to the facts existing in this case. The authorities relied on in support of this proposition will be found to differ essentially from the case at bar, and to relate to cases influenced by some peculiar statute provision differing essentially from that of our own State, or to the cases where the certificates for stock were assessable upon their face or by the charter or by-laws of the company, and payable by instalments. In such case the stock, either upon its face, or by the charter or by-laws being liable to assessments, and transferred while the company is solvent, the transferee is substituted for the original subscriber or holder of the stock as to the rights of the company in demanding and collecting assessments. *Upton* v. *Tribilcock,* 91 U. S. 45. *Pullman* v. *Upton,* 96 U. S. 328."

To the same effect see *Morgan* v. *Howland,* 89 Maine, 484, and *Maine Trust & Banking Co.* v. *Southern Loan & Trust Co.* 92 Maine, 444, 451.

The decision of the highest court of a soverign State as to the meaning of a statute of that State commonly is accepted as final. Moreover, this interpretation accords fully with our own view of its meaning. There appears to be nothing inconsistent with this conclusion in *McAvity* v. *Lincoln Pulp & Paper Co.* 82 Maine, 504, *Appleton* v. *Turnbull*, 84 Maine, 72, and *Barron* v. *Burrill*,. 86 Maine, 66, especially relied upon by the plaintiff.

Applying this statement of the law to the facts in the case at bar, it is manifest that the plaintiff fails to make out a case. None of the defendants had any dealings directly with the Maine corporation. That corporation was organized by one McCormick for the purpose of erecting a building in which to hold exhibitions of the shoe and leather industries of New England, and exhibitions of other sorts. McCormick is found by the master to have been a man of enterprise and executive ability, who devoted much time to the perfecting of plans for the construction of a suitable building, securing options upon land upon which to erect such a building, and had plans drawn showing its spaces and general adaptability for exhibition uses. His acquaintance was large among those engaged in the shoe and leather trade, and he secured a considerable number of contracts aggregating about $90,000 for the use of space in the proposed building. Thereafter, the entire capital stock of the corporation, being $100,000 preferred stock and $400,000 of common stock, was issued to McCormick in payment for services rendered and to be rendered, and for assignments of all contracts for space in the exhibition building, which property and services the board of directors by their vote adjudged and declared to be of the fair value of $500,000. At a later time the stock of the corporation was increased by the issuance of $300,000 additional preferred stock to one Smith. The master finds that, although the consideration for which these two issues of stock were made was very much less than the par value of the stock, yet the directors acted in good faith and had no fraudulent intent, and honestly believed that the property purchased and the services rendered and to be rendered by McCormick and Smith were essential to the prosperity of the corporation, of whose ultimate success they appeared to be assured. These issues of stock were made before and during the construction of the building, and before it was completed and the exhibition opened. The evidence is not

reported in full and the findings of the master as to good faith must be accepted. There is nothing in the narration of facts set out in the report which leads us to reverse the conclusion reached by the master in this respect. All of the defendants received their stock from these issues to McCormick or Smith. Most of them were individuals or persons engaged in the shoe and leather trade, either as manufacturers or dealers. To several of them the shares were transferred by McCormick in consideration of paying cash for the space each had contracted to take in the fair building in advance of the opening of the fair. All were interested in the project and were willing to assist in making it a success, apparently both out of regard to McCormick and because they believed that it would be an advantage to their trade. Other transfers were made either as collateral security or in consideration for the loan of money to McCormick. To the defendant Gardiner, McCormick also sold a number of shares at a large discount from their face value. But the report shows that he was persuaded to purchase the stock by McCormick, who represented that it was stock issued to him in payment for services, and from whom he believed he was purchasing it directly. He had not subscribed for or agreed to take stock in the corporation either when it was organized or afterwards. The transfer of three hundred preferred shares of stock in the corporation by McCormick to the Caunt Company as collateral security for loans aggregating about $10,000 stands upon the same basis and did not constitute a subscription for stock.

There is a special claim against the defendant Caunt arising out of these facts: Shortly before the fair was opened McCormick represented to Caunt that he was in great need of money, and that, unless he could secure $10,000, he would not be able to open the fair on time. He persuaded Caunt to purchase one thousand shares of his common stock for $10,000, but only by virtue of an agreement entered into between Caunt and McCormick, by which it was stipulated that the $10,000 should be wholly spent by McCormick in furthering the project of the fair, McCormick agreeing that he should vote his remaining common stock so that the salaries of the officers of the corporation should not exceed a specified maximum, with further terms touching the sale of the common stock held by each in the event of death or desire to dispose of the same. The corporation was not a party to this agree-

ment.   Manifestly its purpose was to protect Caunt as purchaser from McCormick, and not from the corporation, and there is nothing about it which requires the inference that it was in substance an agreement to purchase stock from the corporation.   Indeed, so long as both parties acted in good faith, it tends to confirm the supposition which the master finds existed in Caunt's mind that he was buying stock which belonged to McCormick and that the transaction did not relate to a dealing with the company itself.

In view of all the facts, it was an immaterial circumstance that one of the original certificates was not first issued to McCormick and a new one substituted each time a sale of stock was made. Upon the findings of the master the stock had been legally issued, and the failure on the part of the corporation to put forth the certificate did not impair the rights of the stockholder.   The fact of being a stockholder existed independent of the certificate.   *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 198.   *Kennedy* v. *Hodges,* 215 Mass. 112, 115.

It becomes unnecessary to consider the other questions raised upon the report.

*Bill dismissed with costs.*