ROCHELLE ROOFING COMPANY *vs.* BURLEY AND STEVENS, INCORPORATED, & others.

Suffolk.  December 4, 1916. — March 13, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Corporation,* Foreign, Liability of subscriber for stock under statutes of Maine. *Maine. Equity Pleading and Practice,* Master's report.

In a suit in equity by a judgment creditor of a Maine corporation to enforce the liability imposed by the Revised Statutes of Maine (1903), c. 47, §§ 87, 89, on those "who have subscribed for or agreed to take stock in said corporation and have not paid for the same," one, who bought preferred shares in a Maine

corporation at less than their par value from a trustee to whom all the preferred shares of the corporation had been transferred in payment for his services and for his assignment to the corporation of certain contracts that had been made with him personally, can be found to have purchased such shares from the trustee and not to have subscribed for them within the meaning of the statute of Maine, and so not to be liable to the creditor under the rule established in *Auld* v. *Caunt*, 216 Mass. 381.

The suit in equity above described was referred to a master, who found that the transaction in question was not a sham, that the defendants were not subscribers to the stock of the corporation but were purchasers from the trustee and received their stock from him and had no actual knowledge that it had not been paid for at par, and that there was no fraud or collusion between the defendants or any of them and the corporation or the trustee. The evidence so far as it was reported did not conflict with these findings and no facts inconsistent with them were found by the master. Much of the evidence was oral. The report of the master was confirmed by an order of the judge who heard the case. *Held*, that under these circumstances the findings of the master, who saw the witnesses and their manner of testifying and could judge of the accuracy and truth of their statements, would not be set aside, not having been shown to be clearly wrong.

BILL IN EQUITY, filed in the Superior Court on September 5 and amended on September 13, 1911, by a judgment creditor of the World's Shoe and Leather Fair Company, a corporation established under the laws of the State of Maine, to enforce the alleged liability of the defendants under the Revised Statutes of Maine (1903), c. 47, §§ 87, 89, as subscribers for stock in that corporation for which they had not paid.

The case was referred to a master, who made a report containing the findings that are stated in the opinion.

The case was heard by *Jenney*, J., upon exceptions to the master's report. The judge made an interlocutory decree that all exceptions to the master's report be overruled and that the report be confirmed. Later by order of the same judge a final decree was entered dismissing the bill, with one bill of costs taxed by the clerk in favor of the defendants. The plaintiff appealed from both decrees and requested the judge to report the material facts found by him as provided by R. L. c. 159, § 23. The judge made the following report: "In accordance with this request, and assuming that such request can properly be made for the finding of facts, I find the facts to be as stated in the master's report."

Revised Statutes of Maine (1903), c. 47, §§ 87, 89, provide as follows:

"Sec. 87. The capital stock subscribed for any corporation is declared to be and stands for the security of all creditors thereof; and no payment upon any subscription to or agreement for the capital stock of any corporation, shall be deemed a payment within the purview of this chapter, unless *bona fide* made in cash, or in some other matter or thing at a *bona fide* and fair valuation thereof."

"Sec. 89. Any person having such judgment . . . may, within two years after their right of action herein given accrues, commence an action on the case or bill in equity, without demand or other previous formalities, against any persons, if a bill in equity, jointly or severally, otherwise severally, who have subscribed for or agreed to take stock in said corporation and have not paid for the same; . . . and in such action they may recover the amount of the capital stock so remaining unpaid. . . ."

The case was submitted on briefs.

*C. F. Lovejoy*, for the plaintiff.

*W. A. Reed, H. F. Knight & W. B. Farr*, for the defendants.

CARROLL, J. The plaintiff, a judgment creditor of a Maine corporation, brings this bill in equity under the Revised Statutes of Maine (1903), c. 47, §§ 87, 89, to recover against the defendants on the ground that they "have subscribed for or agreed to take stock in said corporation and have not paid for the same." In *Auld* v. *Caunt*, 216 Mass. 381, it was decided that a purchaser of stock from a subscriber was not one who had subscribed for or agreed to take stock in the corporation within the meaning of this statute and was not liable thereunder. The plaintiff seeks to distinguish that case from the one at bar. It contends that the defendants, in purchasing their stock, dealt with the corporation and that, until the stock was issued to them, it was never fully issued and was treasury stock.

The master found that one Oran McCormick formed a plan of holding a series of annual fairs for the exhibition of the products of the shoe manufacturers of New England. He had perfected the general arrangements for a building and arranged for a lease of land in Cambridge on the Charles River Embankment. Before June 13, 1907, he had made contracts for space with various manufacturers, amounting to $89,000. These contracts provided that sample room and exhibit space were to be reserved in the

main building for which each exhibitor was to pay $1,000 "one day after the exhibition is opened to the public." The undertaking was incorporated June 5, 1907, by McCormick's direction, under the laws of the State of Maine, with an authorized capital of $500,000, consisting of one thousand shares of preferred stock and four thousand shares of common stock. McCormick was elected president and with two others constituted the board of directors.

At the first meeting of the board, June 13, 1907, it was voted, in consideration of the assignment to the corporation of the space contracts of the exhibitors, made with McCormick personally, and of his agreement to give his services to the corporation in promoting the exhibition, that stock to the amount of $500,000 was to be issued to him; and his written offer to this effect was accepted.

At the second meeting of the board of directors, June 21, 1907, the secretary announced that McCormick had delivered to the corporation an assignment of the contracts, and a notice was read announcing that he had commenced the performance of the services referred to and directed the stock to be issued to him or his order. It was voted that the president and cashier be directed to deliver certificates of the capital stock "to the persons and for the amounts named in the communication of Oran McCormick to this Corporation above referred to." A recess was had during which the stock was issued to McCormick in his name; one thousand shares of the preferred stock was in the form of a single certificate. The meeting then reconvened and a declaration of trust in which he agreed to hold one thousand shares of the preferred stock, and a declaration of trust in which he agreed to hold two hundred shares of the common stock, were read and ordered filed in the stock certificate book. He then surrendered his certificate for one thousand shares of the preferred stock which is material in this case, and a new certificate for the same number of shares was issued to him as trustee.

During the summer of 1907 McCormick found it difficult to raise money for the venture. He asked the exhibitors who had contracted for space to pay in advance and take the preferred stock held by him in trust. September 23, 1907, he wrote to each of these exhibitors saying in substance that ten shares of

the preferred stock at $100 par value would be delivered, if $1,000, the amount of the contract, was received on or before October 15, 1907. The letter was signed, "First World's Shoe & Leather Fair Co. [the corporate name] Oran McCormick President." The defendants made the payments, and by direction of McCormick, upon indorsement and surrender of his certificate, certificates were issued to them.

On June 13, when the agreement was completed, the space contracts and the services of McCormick were accepted in full payment of the stock, and its issue was authorized. There was no definite intention or understanding that the corporation should retain any right or benefit to the stock — McCormick was free to deal with it as his own. *Auld* v. *Caunt, supra,* and cases cited at page 386. On June 21, when the stock was issued, the trust agreement and transfer to McCormick as trustee did not cancel the issue. As found by the master, the transaction was not a mere sham; the defendants were not subscribers to the stock of the corporation, — they were purchasers from McCormick and received their stock from him. They had no actual knowledge it had not been paid for at par, and there was no fraud or collusion between them and the corporation and McCormick, or any of them. This purchase of the stock was not equivalent to a subscription to stock in the corporation, although the defendants did not pay full value for it.

These findings should not be reversed. The evidence so far as it is reported does not conflict with them, and no facts are found by the master inconsistent with them. He saw the witnesses and their manner of testifying — he could judge of the accuracy and truth of their statements. Much of the evidence was oral. The report has been confirmed by the court and will not be set aside unless clearly wrong. *Joslin* v. *Goddard,* 187 Mass. 165, 167. *Willets* v. *Langhaar,* 212 Mass. 573, 576.

The success of the enterprise depended almost entirely on the efforts and co-operation of McCormick. It was his plan. He knew the trade and secured the contracts. While the directors did not believe that the contracts and services were worth $500,000 in cash, they recognized their importance. The value given by McCormick was substantial and was so regarded by the directors. They in good faith considered it greater than it really was, and

they had no conscious intention of evading the laws of Maine. Even if the letter of September 23, 1907, requesting each exhibitor to pay $1,000 on or before October 15, 1907, — the amount called for in the contracts for space, — purported to be the letter of the corporation and was signed by McCormick as president, the defendants secured the stock which belonged to him, and they received it from him. As stated by the master, "In offering this stock to the defendants, McCormick ostensibly acted as president of the corporation. He in fact held title as trustee. He was a layman, and the distinction was not in his mind." The understanding of the defendants was that they were securing stock already issued and paid for, and their understanding went no further "than a vague belief that" in some manner it might "become available to the corporation as treasury stock."

As the stock was fully issued and was not a new issue, or a reissue to them as subscribers, it was not treasury stock as contended by the plaintiff. And as the defendants purchased it from McCormick, although he held it in trust, they dealt with him and not with the corporation, and they were not subscribers within the meaning of this statute of Maine.

*Dunn* v. *Howe*, 107 Fed. Rep. 849, relied on by the plaintiff, does not conflict with this decision. It was there held to be a question of fact whether the defendant dealt with the corporation in such a manner as to make him a subscriber within the meaning of the statute. In the case at bar it was found as a fact that the stock purchased by the defendants belonged to McCormick and they received it from him; therefore, they did not deal with the corporation but with McCormick.

*Decree affirmed with costs.*