JAMES HOPKINS *vs.* ALBERT FLOWER & others.

Suffolk.   March 9, 1926. — June 9, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract,* Validity.   *Usury.   Guaranty.   Evidence,* Of law of another State.   *Subrogation.*

Where, at the hearing of a suit in equity, a question as to the law of the State of New York was in issue and no testimony of experts or of other witnesses on that subject was offered, but only statutes of that State and official reports of decisions of its courts, this court on appeal from a final decree in the trial court received the evidence and determined the fact and the inferences of fact to be drawn therefrom, without giving weight to the conclusions of the trial judge.

Upon review of such statutes and decisions of courts of the State of New York, it was *held,* that the law of the State of New York was that the intent of the borrower as well as the intent of the lender was a necessary element of the defence of usury; and also that the person offering that defence must make out his case by clear and decisive proof and not by resorting to inference and implication.

At the trial of a suit in equity upon a contract of guaranty of an agreement to repay a loan of $30,000, made and to be performed in the State of New York, the defendant contended that the loan was usurious. It appeared that the borrower had agreed to pay a broker a commission if he succeeded in obtaining the loan; that the agreement between the borrower and the lender provided that the lender should pay the borrower $28,300, and the broker $1,700 in payment of commissions to which "he was entitled"; that a side agreement was entered into between the lender and the broker before the agreement between the borrower and the lender was made, which provided that the broker was to pay over to the lender $1,450 out of the $1,700, "as a recompense for lending the $30,000." This side agreement was carried out. The borrower was not called as a witness at the trial. No testimony was introduced to the effect that the borrower knew of the agreement between the lender and the broker. *Held*, that

(1) As the burden was upon the defendant to prove his defence, any favorable inference from the failure of the borrower to appear as a witness must of necessity react to the detriment of the defendant;

(2) There was no room for the application of the familiar doctrine, *qui facit per alium facit per se;*

(3) It could not be found that the borrower ratified or adopted the action of his broker;

(4) On the evidence, a finding was not warranted that the intent on the part of the, borrower to pay illegal interest, required by the New York law to be proved "clearly and decisively," was so established;

(5) A decree for the plaintiff was warranted;

(6) The plaintiff, having no duty to disclose to the borrower the agreement between him and the borrower's broker, could not be said not to have come into court with clean hands by reason of a failure so to disclose;

(7) Since the receipt of the $1,450 by the lender in the circumstances did not violate the usury statute of the State of New York, the plaintiff should not be required to remit that sum before he would be entitled to a standing in an equity court.

BILL IN EQUITY, filed in the Superior Court on March 29, 1922, and afterwards amended, to enforce an agreement of guaranty described in the opinion.

In the Superior Court, the suit was heard by *Hammond*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 35 (1905). Material facts are stated in the opinion. The trial judge ruled: "The natural and reasonable inference to be drawn from the transaction regarding the $1,700 paid to Holch, that it was intended by the parties to the loan as a device to evade the usury laws, and not as a provision for the payment of a reasonable and just commission, was not explained or met by the evidence. I am un-

able to escape the conclusion that such was the fact, and I so find and rule that the loan was void for usury under the laws of New York."

By order of the judge, a final decree was entered, dismissing the bill. The plaintiff appealed.

*J. L. Wilkie,* of New York, (*E. R. Dewing* with him,) for the plaintiff.

*C. S. Hill,* (*F. D. Bonner* with him,) for the defendants.

PIERCE, J. This is a suit in equity, brought in the Superior Court under G. L. c. 214, § 3, cl. 8, to establish a debt alleged to be owed and due the plaintiff by the defendant Albert Flower as the guarantor of the payment of $30,000 which was loaned by the plaintiff to one Viola H. P. Brown; and to reach and apply certain shares of stock in the defendant company, Albert Flower, Inc., alleged to be owned by the defendant Albert Flower, individually, and standing in his name or in the name of his wife, the defendant Mina Flower, or of both. A commissioner was appointed and the testimony is reported. The case was tried upon the merits before a judge of the Superior Court sitting in equity, and a decree entered for the defendants dismissing the bill with costs. The case comes before this court on the plaintiff's appeal from the final decree.

In this opinion the plaintiff will hereinafter be called the lender and Viola H. P. Brown the borrower. The material facts charged in the bill, admitted by the answer, found by the judge, and supported by the reported testimony of witnesses, are in substance as follows: About June 4, 1921, the borrower contemplated entering into a purchase contract with one Mrs. Orvis of New York City, for the purchase of all the capital stock of the Equinox Company (a corporation organized under the laws of Vermont), amounting to two thousand shares, for the sum of $800,000, a part of which was to be paid in cash, a part out of the proceeds of a first mortgage bond issue to be placed upon the property of the corporation, and the balance by a second mortgage upon said property. As she needed $30,000 to carry out her intention, she offered one Niels F. Holch, an employee of the New York banking house of A. B. Leach and Company, a

commission for his services if he would obtain such a loan. In furtherance of her wishes, she had a conference with Holch and the defendant Albert Flower at Flower's home in Boston, which was continued between Holch and Flower the next day at Flower's office in Boston. The result of these conferences was that the defendant Flower agreed in writing to guarantee the repayment of such a loan if made.

Subsequently a written agreement, printed in the record, was drafted in New York in a form advised by the attorney for the lender. The written guaranty was made a part of the instrument of agreement and followed it. The written agreement was signed by the lender and borrower, and was guaranteed by the defendant Flower. Therein the lender agreed to give the borrower a certified check for $28,300 and pay Holch $1,700, "which is in payment of commissions to which the said Holch is entitled from the Borrower for his services in negotiating said loan, the receipt of which said Thirty thousand dollars ($30,000) is hereby acknowledged." The written agreement does not stipulate the amount or the nature of the compensation which the lender would receive for making the loan. The sum to be lent ($30,000) was to be repaid within sixty days from the date of the agreement. No interest or other compensation by way of interest for the use of the money loaned was promised or provided for by the agreement, and no note was given. The loan, however, was to be secured by an order executed simultaneously with the execution of the agreement "upon the Bankers Trust Company directing it to pay to the Lendor Thirty thousand dollars ($30,000) out of all that part of the proceeds received by it from the sale of bonds of the Equinox Company, issued under the first mortgage dated May 1, 1921," subject to certain conditions relating to the taking up of such bonds by the company.

It appears in evidence, and it is not disputed, that a side agreement was entered into between the lender and Holch before the loan agreement was drawn up, which provided that Holch was to pay over to the lender $1,450 out of the $1,700, as a recompense for lending the $30,000. This side agreement was carried out; the $1,700 check received by

Holch was divided by him with the lender, and pursuant thereto the lender received $1,450 and Holch retained $250 for himself.

No testimony of expert or of other witnesses was offered or received by the judge as to the law of New York State upon the subject of usury. The plaintiff offered and the judge received in evidence §§ 370, 371, 374, 379–381 of c. 20 of Consol. Laws of New York (1909) (the general business law), and thirty-two judicial decisions of the State of New York. At the same time the defendants offered and the judge received judicial decisions of the State of New York and decisions of the Federal Court, these decisions in the large part not being of courts of last resort. As the evidence upon the issue of the law of New York on the subject of usury was entirely documentary, this court on appeal receives the evidence and determines the fact and the inference of fact to be drawn therefrom in the same way the judge received it, without weight given to the conclusion of the judge who heard the case below. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143. *Hutchins* v. *Mead,* 220 Mass. 348. *Mansfield* v. *Wiles,* 221 Mass. 75, 84.

Section 370, *supra,* reads: "The rate of interest upon the loan or forbearance of any money, goods or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time."

Section 371, *supra,* reads: "No person or corporation shall, directly or indirectly, take or receive in money, goods or things in action, or in any other way, any greater sum or greater value, for the loan or forbearance of any money, goods or things in action, than is above prescribed."

Usury is defined to be an illegal profit required and received by a lender of a sum of money from the borrower. 4 Blackstone, 156. To constitute usury, in contemplation of law, the following essential elements must be present: "(1) There must be a loan or forbearance; (2) the loan must be of money or something circulating as money; (3) it must be re-payable absolutely and at all events; (4) something must be exacted for the use of the money in excess of and in

addition to the interest allowed by law." Some decisions are to the effect that there is a fifth element consisting of the intent of the parties. *Clemens* v. *Crane*, 234 Ill. 215, 229. Williston on Contracts, § 1684, is in accord. The form of the contract is not conclusive of the question, and it is manifest that no device intended to cover up the real character of the transaction can ever avail to defeat the statute. *Cooper* v. *Nock*, 27 Ill. 301. The question presented in the case at bar is, whether the decisions of the New York Court of Appeals have construed the quoted statute to require the fifth element, that is, that to constitute a violation of the statute there must be a mutual agreement on the part of the lender to take and on the part of the borrower to pay more than six per cent per annum for the loan of money and for no other consideration than the mere receipt by the lender for "the loan or forbearance of any money, goods or things." See *Auld* v. *Caunt*, 216 Mass. 381, 384. The following decisions of the highest court of the State of New York, admitted in evidence in proof of the fact in issue, either by their result or by their *dicta*, seem to require proof of the intent of the parties:

*Condit* v. *Baldwin*, 21 N. Y. 219, is a decision to the effect that the exaction of a bonus by an agent for himself as the condition of making a loan, without the knowledge or authority of his principal, did not constitute usury in the principal. The court quoted with approval from the opinion of Justice Story in *Bank of United States* v. *Waggener*, 9 Pet. 378, 399, in which it was said: ". . . to constitute usury within the prohibitions of the law there must be an intention knowingly to contract for or take usurious interest; for if neither party intend it, but act *bona fide* and innocently, the law will not infer a corrupt agreement." The decision itself is not authority, however, for requiring intent on the part of the borrower.

In *Guggenheimer* v. *Geiszler*, 81 N. Y. 293, 296, the court said, speaking of the intent of the borrower: "There was no intent on the part of Geiszler to pay usury; no expectation on his part that Seiter should have usury. And I am not able to perceive how, in the absence of such intent, there

could have been an agreement or contract for it, or how the transaction can be subjected to the condemnation of the statute against usury. Either the attorney [who obtained the loan for the defendant], without right, or Seiter [the lender], by false pretense, has deprived the defendant Geiszler of the money due to him, but it was by virtue of no agreement, and so there can be no usury."

In *Morton* v. *Thurber*, 85 N. Y. 550, 556, the lender exacted legal interest and a further sum which he falsely represented to be for expenses incurred in securing the money. The borrower did not know that the representation was false. The court, citing the Guggenheimer case, *supra*, said: "To constitute usury it must be shown that the additional interest is paid or retained in pursuance of a mutual agreement between the parties."

Williston on Contracts, § 1698, recognizes the effect of the Thurber case by stating, after setting forth the principle for which it stands: "In New York at least such a mistake of fact on the part of the borrower prevents the transaction from being usurious though the lender had a corrupt purpose, and what was actually bargained far exceeds what the law permits. But generally it is held that so far as intent is important, it is only that of the lender which is determinative."

In *Brown* v. *Robinson*, 224 N. Y. 301, decided in 1918, the doctrine of Guggenheimer and Thurber cases, *supra*, was upheld. The court cited them and said: "The intent to take usurious interest requires such purpose on the part of the borrower as well as upon the part of the lender."

The court also affirmed, citing *Matthews* v. *Coe*, 70 N. Y. 239, and *White* v. *Benjamin*, 138 N. Y. 623, 624, a long line of cases by stating: "And before holding that a person has been guilty of such an offense it should have been clearly and decisively proved and found and not have been left to inference and implication."

In *Fellows* v. *Longyor*, 91 N. Y. 324, 329, the court said: "By the contract of loan, the real lenders were not to receive anything in excess of legal interest."

In *Philips* v. *Mackellar*, 92 N. Y. 34, 37, the evidence showed that the borrower neither contemplated to pay illegal

interest nor took any part in negotiating the loan. The court said: "It is true there is some evidence to establish the fact that the alleged usury was paid by the defendant's [borrower's] son out of the funds of the mortgagor, but this does not prove usury, as such contract rests upon the basis that there was an agreement of the parties by which their minds met, and the one agreed to receive and the other to take an unlawful premium upon the loan made."

*Matter of Consalus*, 95 N. Y. 340, 344, the court said: "Whatever usurious agreement was made subsequently to the original loan cannot affect it, but simply avoids the notes which were subsequently given."

In *Baldwin* v. *Doying*, 114 N. Y. 452, 457, the court said: "The burden of proof was upon the defendants to show the usurious exaction by the party discounting the note . . . . That result was not accomplished by proof of payment of a sum of money exceeding the legal rate of interest to a party undertaking, for a consideration, to procure the note to be discounted."

In *White* v. *Benjamin*, 138 N. Y. 623, 625, the court said: "There is some evidence from which it could be inferred that the defendant [borrower] at various times paid to Mr. White [lender] more than the legal rate of interest; but it does not appear that such payments were made in pursuance of a usurious agreement. It is fairly inferable from all the evidence that the payments were voluntarily made by the defendant and not in pursuance of any exaction made by Mr. White at the time of the loan of money."

*Rosenstein* v. *Fox*, 150 N. Y. 354, is another New York case holding that to constitute usury it must be shown that the additional interest was paid as a result of an usurious agreement between the parties at the time the loan was made. It is cited together with *Hartley* v. *Eagle Ins. Co.* 222 N. Y. 178, by Williston on Contracts, § 1698, for the proposition that "in some jurisdictions, however, it seems that a wilful purpose to transgress the law is essential."

New York decisions and *dicta* which have some tendency to support the result reached by the lower court:

In *Byrnes* v. *Labagh*, 4 N. Y. St. Rep. 522, relied on by.

the defendants, the usury statute of New Jersey which enables the lender to recover the value actually lost although the agreement was usurious was involved. The New York statute makes the agreement void in its entirety. The court found that the referee had erred in finding that the agreement between the broker and the lender whereby the lender received illegal interest was not known to the borrower because three witnesses had testified as against one to this effect. The court, however, then stated that this was not material because the agreement between the borrower and the agents stipulated that the agents should be paid $1,500 "to pay expenses, etc." The court after stating that the "etc." was to include the costs of the loan and that the borrowers had "authorized their agent in legal effect to pay whatever bonus was necessary in order to get the loan" reached its result by applying the familiar doctrine of the law of agency that whatever is done by an authorized agent is done by the principal. This case was affirmed without opinion in 106 N. Y. 669. It was cited and relied on by the court below and is relied on by the defendant.

In *Bliven* v. *Lydecker*, 130 N. Y. 102, cited by the defendant, the borrower agreed to pay the intermediate party, the agent of the lender, $400 to secure a loan. A memorandum was drawn up which revealed that in return for a $4,000 mortgage the borrower had received $3,600, on which he was paying the legal rate of interest. This memorandum was drawn up by the agent of the lender and the borrower. The lender was not present when the usurious agreement was made by the agent [her husband] or during any of the negotiations that resulted in the execution of the mortgage. The court said: "But where, as in this case, an agent authorized to lend, but not to take usury, lends the money of his principal at a usurious rate and both the sum lent and the usury exacted are secured by the same instrument, which the principal, knowing that it is for a larger amount than the sum loaned, without explanation, accepts and has the benefit of, she adopts, ratifies and is bound by the act of her agent the same as if it had been done by herself."

In *Quackenbos* v. *Sayer*, 62 N. Y. 344, the court said: "The

transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. The shifts and devices of usurers to evade the statutes against usury, have taken every shape and form that the wit of man could devise, but none have been allowed to prevail. Courts have been astute in getting at the true intent of the parties, and giving effect to the statute."

In *Hall* v. *Eagle Ins. Co.* 151 App. Div. (N. Y.) 815, 826, affirmed without opinion in 211 N. Y. 507, the court said: "It was early recognized by the courts that if the form of the contract were to be controlling, the statute against usury would be substantially unenforcible, and thus it was made the duty of the court in each case presented to examine into the substance of the transaction between the parties and determine whether the intent which pervaded it was one which violated the statute."

In *Hartley* v. *Eagle Ins. Co.* 222 N. Y. 178, 185, 187, the court said: "The question in each case is, and necessarily must be, whether the agreement be fair and reasonable, or a mere device to evade the usury statutes . . . . So here the question is did the parties intend to evade the usury statutes of the State, or was the interest payable so large that, in view of all the circumstances, an intent to provide for the payment of interest beyond the legal rate will necessarily be imputed to them?"

We are of opinion that, on the New York decisions which govern this court's interpretation of the New York statute (*Auld* v. *Caunt*, 216 Mass. page 384), the intent of the borrower as well as the intent of the lender is a necessary element of the defence of usury; and also that the person offering the defence must make out his case by clear and decisive proof and not by resorting to inference and implication. It seems absurd to say that, if the borrower intended to pay illegal interest, he has a defence but that without such intent he has no defence. An explanation of this may be that the courts have hesitated before finding that the defence was established due to the fact that the usury statute prohibits the lender from recovering even the amount of the loan. On the evidence presented at the trial of this case, in the opinion

of a majority of the court it cannot be said that the intent on the part of the borrower to pay illegal interest was "clearly and decisively proved." The borrower was not a witness in the case. It is obvious that, as the burden is upon the defendant to make out this defence, any unfavorable inference from the failure of the borrower to appear must of necessity react to the detriment of the defendant. No testimony was introduced to the effect that the borrower knew of the agreement between the lender and the broker. The only testimony on this point was that of the broker who said that the borrower did not know of this agreement. The only possible evidence of knowledge of the fact by the borrower is the inference that may be made from the written agreement between the borrower and the lender. The lender was to give the borrower a check for $28,300 and the broker a check for $1,700, stated in the agreement to be commission money. Nothing was stated as to the compensation which the lender was to receive. The evidential value of this is destroyed to a certain extent by the fact that the law implies that the legal rate is to be paid when nothing is said about interest. The fact that the lender was to pay the broker $1,700 is of some evidential value without a doubt but standing as it does practically alone it does not seem to be the degree of proof required by the New York decisions. The borrower agreed to pay the broker a commission if he succeeded in obtaining the loan. There is no room for the application of the familiar doctrine, *qui facit per alium facit per se*. It is likewise difficult to assert that the borrower without knowledge of the agreement ratified or adopted the act of her agent.

The defendant contends that the case is a proper one for the application of the doctrine that a person must come into equity with clean hands. The defendant's argument is that if the borrower knew of the side agreement she would have a defence, and therefore the lender is guilty of fraud in concealing this knowledge. The fallacy of the argument is obvious. It is clear that unless the lender has a duty to disclose the effect of the concealment is immaterial. It does not seem possible to work out such a duty on the part of the

lender. Assuming this to be true, it is difficult to say the result is different as to the guarantor who in contemplation of the law stands in the shoes of the borrower. On the evidence the transaction is nothing more than this: A agrees to give B his note for $1,000 if B will give him a check for $800 and give C a check for $200. D guarantees the payment of the note. If C had previously agreed to give B $100 out of the $200 it does not seem that B is under a duty to tell either A or D. The transactions are separate.

The broker received as a commission an amount of money in excess of that which he is entitled to under the general business laws of New York, *supra*, which are in part as follows:

Section 374. "Corporations prohibited from interposing defense of usury. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships."

Section 379. "Interest permitted on advances on collateral security. In any case hereafter in which advances of money, repayable on demand, to an amount not less than five thousand dollars, are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, it shall be lawful to receive or to contract to receive and collect, as compensation for making such advances, any sum to be agreed upon in writing, by the parties to such transaction."

Section 380. "Brokerage on loans. No person shall directly or indirectly, take or receive more than fifty cents for a brokerage, soliciting, driving or procuring the loan or forbearance of one hundred dollars, and in that proportion for a greater or less sum, except loans on real estate security; nor more than thirty-eight cents for making or renewing any bond, bill, note or other security given for such loan or forbearance, or for any counter bond, bill, note or other security concerning the same."

Section 381. "Recovery of excess. Every person who

shall pay, deliver or deposit any money, property or thing in action, over and above the rate aforesaid, and his personal-representatives may, within one year after such payment, delivery of deposit, sue for and recover the same of the person so taking or receiving such money, property or thing in action, or of his personal representatives.

"In case such suit shall not be brought within the time above prescribed, in good faith, or in case it shall be discontinued, or wilfully delayed, then the overseers of the poor of the city or town where the offense was committed, may, within one year after such neglect, discontinuance or delay, sue for and recover the money, property or thing in action, so received, delivered or deposited, from the person receiving the same, or his personal representatives, for the use of the poor of the county."

Although the broker has paid the lender, he will be required to pay over again a sum equal to the amount of illegal commission to the guarantor, who is subrogated to the rights of the borrower.   On the theory of the case adopted, the receipt of the $1,450 by the lender did not violate the usury statute and, therefore, it cannot be said that he must remit this sum before he will be entitled to a standing in an equity court.

It results that the decree must be reversed, the claim of the plaintiff established in the sum of $30,000 with interest from the due date of the loan, and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Decree reversed with costs.*